## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| **ANTONIO BROWN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Case No. 15-0043 (RCL)** |
| ) | |
| **DISTRICT OF COLUMBIA,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| _____ ) | |

## MEMORANDUM OPINION

Plaintiff Antonio Brown files this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et. seq, claiming that he was denied a free appropriate public education ("FAPE"), as the statute requires. In bringing this lawsuit, plaintiff also seeks to reverse the decision of an impartial hearing officer, who ruled against the plaintiff at the administrative level. Plaintiff now brings the following claims, all of which the hearing officer denied, alleging that he was denied a FAPE because: (i) District of Columbia Public Schools ("DCPS") failed to create an appropriate Individualized Education Plan ("IEP") for him at two IEP meetings held in the summer of 2014; (ii) DCPS failed to discuss and determine his physical placement during the IEP meetings; (iii) DCPS neglected to consider new data regarding plaintiff's special education needs following a violent shooting; (iv) DCPS placed plaintiff in Anacostia Senior High School ("Anacostia HS"), which plaintiff claims was incapable of providing him a FAPE; (v) DCPS failed to issue a prior written notice regarding his placement in Anacostia HS; and (vi) DCPS

inappropriately changed plaintiff's placement from a full-time special education school to a less restrictive environment. Compl. ¶ 52.

Plaintiff now seeks a declaratory judgment stating that DCPS denied him a FAPE and requests that the Court order DCPS to issue a written notice for plaintiff to attend New Beginnings Vocational School ("New Beginnings"). *Id.* at 35–36. Additionally, plaintiff requests that DCPS be ordered to fund tuition and transportation to attend New Beginnings retroactive to January 6, 2014, convene an IEP meeting to incorporate new data, and if additional information is needed, administer medical and psychological evaluations to determine the full extent of plaintiff's special education needs. *Id.* at 36.

Recently before the Court were plaintiff's [10] motion for summary judgment, defendant's [14] cross-motion for summary judgement, and plaintiff's [19] objection to the Magistrate Judge's report and recommendation [18]. As stated in an Order [21] dated March 31, 2016, in consideration of the parties' filings, the applicable law, and the record herein, the Court finds that the plaintiff has been denied a FAPE and will therefore grant his motion for summary judgment and deny defendant's cross-motion for summary judgment.

In reaching this result, the Court finds that the defects in plaintiff's IEP—specifically the District's failure to describe the plaintiff's least restrictive environment—deprived plaintiff of a FAPE. Moreover, the Court finds that the District's failure to convene a meeting or incorporate the effects of plaintiff's recent shooting-related injuries represents a second, independent instance in which plaintiff was denied a FAPE. To remedy these violations, the Court finds it is appropriate to order DCPS to assign plaintiff to New Beginnings, to fund his tuition and transportation to attend New Beginnings retroactively effective January 6, 2014, to require the District to convene a new IEP meeting, and if needed, administer necessary evaluations to determine the extent and

nature of plaintiff's disabilities. In granting this relief, the Court has rendered plaintiff's four remaining claims moot.

## I.    BACKGROUND

The background of this case is provided in detail in the Report and Recommendation. *See* Report and Recommendation 2–4, ECF No. 18. To summarize, on December 2, 2013, a hearing officer found that DCPS denied plaintiff—who was nineteen years old at the time—a FAPE by failing to timely identify, locate, and evaluate him for special education services. *Id.* at 2. The hearing officer then ordered DCPS to fund tuition, fees, and transportation for the plaintiff to attend New Beginnings until a multidisciplinary team ("MDT") met to determine his eligibility.

After the hearing officer determined that DCPS denied plaintiff a FAPE, DCPS personnel met twice in the summer of 2014 to determine how best to deal with plaintiff's case. Report & Recommendation 2, ECF No. 18. First, on June 26, 2014, his MDT met and "determined that Plaintiff was eligible for special education and related services under the disability classification of Specific Learning Disability." *Id.* Next, on July 29, 2014, plaintiff's IEP team met and developed his IEP for the 2014-2015 school year. *Id.* On the page of plaintiff's IEP entitled "Least Restrictive Environment" ("LRE"), the IEP team simply listed the number of hours of specialized instruction and behavioral support services plaintiff would receive and noted that plaintiff required "intense remediation in all areas." *Id.*; *see also* Administrative Record 83, ECF No. 9-3 (showing the page of plaintiff's IEP entitled "Least Restrictive Environment"). Indeed, the team did not indicate or describe plaintiff's LRE or the type of placement he needed along the continuum of alternative placements. Report & Recommendation 2 (noting that the LRE page of the IEP contained no explanation for why "services cannot be provided in the general education setting"); *see also id.* at 11 (stating that the hearing officer expressly noted the IEP failed to discuss plaintiff's

LRE and to undertake consideration of alternative placements). With this information missing, plaintiff's IEP was then finalized on August 26, 2014. *Id.* at 2.

Roughly two months after the IEP was complete, DCPS sent a letter to Plaintiff stating that he was to be relocated from New Beginnings and that his "'new location of special education services for the 2014-2015 school year is Anacostia HS.'" *Id.* at 3 (quoting Letter from DCPS, Administrative Record 121, ECF No. 9-3). DCPS had found, essentially, that "Anacostia HS is the DCPS school that has the programming to meet Plaintiff's IEP needs." *Id.* Believing both that the District violated his procedural rights afforded under the IDEA and that New Beginnings was the only school that could appropriately serve his needs, plaintiff filed an administrative complaint on October 23, 2014, alleging that the DCPS denied him a FAPE. *Id.*

On November 3, 2014, DCPS filed a response denying plaintiff's allegations, which presented the following issues to be determined by a hearing officer at a December 2014 due process hearing:

    a. Whether DCPS denied plaintiff a FAPE by failing to create an appropriate IEP for plaintiff at the IEP meetings held on June 25, 2014 and July 29, 2014 and through the present time:

        1. whether DCPS failed to discuss, determine, and indicate on the IEP what the appropriate LRE was for plaintiff and the type of placement plaintiff needed along the continuum of alternative placements;

        2. whether DCPS denied plaintiff a FAPE by failing to discuss and determine plaintiff's placement at the IEP meetings held on June 25, 2014 and July 29, 2014, and instead delegating the placement decision to a team that did not include the plaintiff or individuals knowledgeable about plaintiff;

        3. whether DCPS denied plaintiff a FAPE by failing to attend to new data presented to the Agency following the meetings on June 25, 2014 and July 29, 2014 regarding plaintiff's needs following a severe injury from a shooting, and by failing to hold a meeting to discuss these new needs and update his present levels of performance, despite requests from plaintiff's representatives;

b. Whether DCPS denied plaintiff a FAPE when it placed plaintiff at Anacostia HS on October 22, 2014:

1. whether DCPS denied plaintiff a FAPE by failing to offer plaintiff a placement/program/school capable of providing him a FAPE, given his needs at the current time;
2. whether DCPS failed to issue a prior written notice, or otherwise place plaintiff in a particular educational program/placement within District High School, depriving the plaintiff of the ability to make meaningful educational decisions for himself;
3. whether DCPS inappropriately changed plaintiff's educational placement from a full-time special education day school to a less restrictive environment.

*See* Report & Recommendation 3–4 (citing Hearing Officer Determination 2–3, Administrative Record 585–86, ECF No. 9-9 at 26–27; Compl. ¶ 52).

In an administrative decision dated January 6, 2015, the hearing officer denied relief as to each issue presented. *See* Hearing Officer Determination 11–20, Administrative Record 594–603, ECF No. 9-9 at 35–44. Following this ruling and having exhausted his administrative remedies, plaintiff filed the complaint in the present lawsuit, alleging the same six counts against DCPS. Plaintiff now asks the court to reverse the decision of the hearing officer and order that DCPS designate New Beginnings as plaintiff's educational location, fund tuition and transportation for plaintiff to attend New Beginnings retroactive to January 6, 2014, update the IEP, and if needed, administer necessary evaluations to determine the extent and nature of plaintiff's disabilities.

In May of 2015, plaintiff and defendant filed a motion and cross-motion for summary judgment, respectively. In his motion, plaintiff asserts that he has demonstrated by a preponderance of the evidence that DCPS denied him a FAPE as it relates to each claim presented. Report & Recommendation 4 (citing Mem. of Points [and] Authority in Supp. of Pl.'s Mot. for Summ. J. 16–45, ECF No. 10-1). With respect to plaintiff's first claim, he argues "that in order for an IEP to be appropriate, an appropriately constituted IEP team must first have a discussion about the student's LRE where the student belongs on the continuum of alternative placements and then

determine, in the student's IEP, what the LRE and placement will be for such student." Pl.'s Mot.
for Summ. J. 18. Because the district failed to meet these obligations, the argument goes, the
District denied plaintiff a FAPE. In response, the defendant claims that because the IDEA does not
require the District to identify a particular school in a student's IEP, the plaintiff's IEP was legally
sufficient. Def.'s Opp'n to Pl.'s Mot. for Summ. J. and Def.'s Cross-Mot. for Summ. J. 10, ECF
No. 13. In reply, plaintiff states that DCPS's failure to identify a particular building in his IEP "is
not at all the premise of Plaintiff's argument." Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Summ.
J. 9, ECF No. 15. Instead, plaintiff states that his claim rests on the IEP team's failure to "discuss
and determine the student's educational placement" at the summer 2014 meeting, including the
placement along the continuum of alternative placements and the level of restrictiveness needed.
*Id.* In sum, plaintiff alleges "an inadequacy with the IEP itself" constitutes a denial of a FAPE. *Id.*
at 13. In addition to claim 1, the parties also fully briefed claims 2 through 6. The Court then
referred these motions to a Magistrate Judge for report and recommendation.

      a.   Report and Recommendation

      Although the parties fully briefed all six of plaintiff's claims, the Magistrate Judge's report
and recommendation zeroes in on the first—i.e., that plaintiff was denied a FAPE because his IEP
was defective. In assessing this claim, both the Magistrate Judge and the hearing officer before her
expressly highlighted "at least two deficiencies in the IEP: (1) the failure of DCPS to discuss,
determine, and indicate on the IEP Plaintiff's least restrictive environment, and (2) the failure of
DCPS to undertake consideration of the appropriate placement along the continuum of
placements." Report & Recommendation 11 (quotations omitted). In considering these
deficiencies, however, the hearing officer ruled that "Petitioner did not meet the burden of proving
that DCPS denied Student a FAPE." *Id.* at 12 (quoting Hearing Officer Determination 12,

Administrative Record 595, ECF 9-9 at 36). In reviewing this portion of the hearing officer's decision, however, the Magistrate Judge disagreed. Looking to the IEP's deficiencies, the Magistrate Judge determined that the hearing officer's conclusion that the IEP's deficiencies did not deny plaintiff as FAPE "lack[ed] reasoned and specific findings," and recommended that it be set aside. *Id.* In coming to this conclusion, the Magistrate Judge expressly found that the IDEA requires an IEP to include a discussion of a student's LRE and appropriate placement along the continuum of placement, s*ee* Report & Recommendation 11–12; *see also supra* at 15, a requirement which defendant failed to meet.

After concluding the hearing officer wrongly decided plaintiff's first claim and that the defendant failed to satisfy the IDEA's obligation to discuss plaintiff's LRE and appropriate placement along the continuum in his IEP, the Magistrate Judge remanded the claim to the hearing officer to make further factual findings. Indeed, the Magistrate Judge stated that "judicial review of whether or not a student was denied a FAPE cannot be meaningfully accomplished in the absence of a determination by DCPS regarding the student's least restrictive environment and appropriate placement." *Id.* As such, the report recommended that the action "be remanded [to the hearing officer] for further proceedings, including a determination of Plaintiff's least restrictive environment, and an appropriate placement 'along the continuum of placements.'" *Id.* at 13. Put differently, in the report's view, the Court will only be able to determine whether or not the plaintiff was denied a FAPE once it determines the student's LRE and an appropriate placement along the continuum of placements. Because the hearing officer—not the Court—is in the best position to make those determinations, the Magistrate Judge found that remand is appropriate.

In addition to recommending that the action be remanded to the hearing officer to determine the LRE and discuss alternative placements, the Report also found that plaintiff's other

five claims were depended upon the resolution of the first claim and therefore could not be ruled

on until the first claim was resolved. Essentially, all six claims assert that plaintiff was denied a

FAPE. And as stated, the report found that in order to determine whether or not plaintiff was denied

a FAPE, a court must measure the student's actual placement against his LRE and consider

alternative placements along the continuum of placements. Following this logic, the Magistrate

Judge determined, the remaining six issues all "necessarily involve[] a determination of the first"

issue. *Id.* at 13 n.2. In other words, the Magistrate Judge found that because determining a student's

LRE and possible alternative placements is critical in evaluating whether or not he was denied a

FAPE, plaintiff's remaining claims—all of which allege he was denied a FAPE—could not be

evaluated until the hearing officer makes these baseline determinations embedded in claim 1 (i.e.,

his LRE and appropriate placement along the continuum).

  Responding to this report, the plaintiff objected both to the Magistrate Judge's

recommendation to remand plaintiff's first claim to the heading officer and to the Magistrate

Judge's determination that plaintiff's remaining claims all depend on the resolution of his first

claim. First, plaintiff claims that remand is inappropriate in this case because the issue "could have

and should have been decided on the record, without the need for any additional fact-finding

through a remand." Pl.'s Mot. to Reject the Report and Recommendation 3, ECF No. 19. Indeed,

with respect to the first claim, plaintiff argues "DCPS denied him a FAPE by failing to create

appropriate IEPs for him during two meetings held in late-June 2014, specifically, by failing to

discuss, determine, and indicate on the IEP, not only what the appropriate LRE was for him, but

the type of placement along the continuum of alternative placements." *Id.* at 6. In other words, the

first claim asserts that plaintiff was denied a FAPE because the IEP was inadequate, not because

his Anacostia HS was incapable of serving his needs (plaintiff makes variations of that argument

in claims four through six). Therefore, in plaintiff's view, the Court need not consider plaintiff's LRE to rule on this claim. Second, plaintiff argues that although "all of the claims litigated in the underlying administrative case . . . came from the same nucleus of facts, they implicated a number of different statutory and legal requirements that are not all reliant upon the team's determination of the student's appropriate LRE and placement." *Id.* at 5–6. Accordingly, the Court is presently able to determine all six of plaintiff's claim and need not wait until the hearing officer makes additional factual determinations.

Lastly, it is important to note that neither plaintiff nor defendant object to the report and recommendation's findings that the IDEA and its regulations require that a student's IEP include a discussion of his LRE and an appropriate placement along the continuum of placements. *See id.* at 2–3.

## II.   LEGAL STANDARDS

### a.   Summary Judgment Under Federal Rule of Civil Procedure 56

As stated, the parties have filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("FRCP 56"). Under FRCP 56, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving

party's favor. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

### b.  Review of Administrative Decision Under the IDEA

In the present action, plaintiff seeks to overturn the decision of an administrative hearing officer. The IDEA permits "any party aggrieved by the findings and decision" rendered during administrative proceedings to "bring a civil action" in state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2). The reviewing court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). In a review of a hearing officer's decision, the burden of proof is always on the party challenging the administrative determination. *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989)); *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 66 (D.D.C. 2010) (citing this standard).

Although administrative decisions are reviewed based on the preponderance of the evidence, this standard does not authorize unfettered de novo review. *See Bd. of Educ. of Hedrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982) ("Thus the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."). Indeed, when considering an appeal of a hearing officer's ruling, courts must give the administrative proceedings "due weight," *id.*, and "[f]actual findings from the administrative proceedings are to be considered prima facie correct." *Roark ex rel. Roark v. District of Columbia*, 460 F. Supp. 2d 32, 38 (D.D.C. 2006)

(quoting *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003)). However, the IDEA also suggests "less deference than is conventional in administrative proceedings," *Reid*, 401 F.3d at 521, since the district court is allowed to hear additional evidence at the request of the party. *See* 20 U.S.C. § 1415(i)(2)(C)(ii). Lastly, when no additional evidence is introduced, a motion for summary judgment operates as a motion for judgment based on the evidence constituting the administrative record. 20 U.S.C. § 1415(i)(2)(B); *District of Columbia v. Ramirez*, 377 F. Supp. 2d 63, 67 (D.D.C. 2005) (citing this standard).

### c.   Reviewing a Magistrate Judge's Report and Recommendation

As discussed, plaintiff has objected to two specific portions of the magistrate judge's report and recommendation. This Court "considers de novo those portions of [a magistrate judge's report and] recommendation to which objections have been made, and 'may accept, reject, or modify the recommended decision[.]'" *Rooths v. District of Columbia*, 802 F. Supp. 2d 56, 59–60 (D.D.C. 2011) (emphasis in original) (quoting Fed. R. Civ. P. 72(b)). In other words, the Court's analysis with respect to such issues is "equivalent to a decision in the first instance on the merits" of plaintiff's summary judgment motion. *Id.* at 60. In contrast, 28 U.S.C. § 636, which confers power and jurisdiction to magistrate judges, does not "require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## III.   ANALYSIS

With respect to the plaintiff's first claim, the Court finds that plaintiff was denied a FAPE and will grant his motion for summary judgment. In coming to this conclusion, the Court will first adopt the Magistrate Judge's uncontested legal conclusion that the IDEA requires an IEP to discuss a student's LRE and possible alternative placements. Second, the Court finds that the District's

violation of this requirement was more than a mere technical violation and effectively deprived plaintiff of a FAPE. Third, looking to plaintiff's third claim, the Court finds that the District's failure to convene an IEP meeting to discuss the disability-related effects of a recent shooting also represented the deprivation of a FAPE. Lastly, to remedy these violations, the Court finds it is appropriate to require DCPS (i) to issue a Prior Written Notice for plaintiff to attend New Beginnings, (ii) to fund tuition and transportation for plaintiff to attend New Beginnings Vocational School retroactive to January 6, 2014; (iii) to convene an IEP meeting to discuss and respond to plaintiff's recently developed disability needs; and (iv) if needed, to administer necessary evaluations to determine the extent and nature of plaintiff's disabilities.

After ordering these remedies, the plaintiff's four remaining claims are moot because the Court is not in a position to award any additional effective relief. *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008) (stating that a claim becomes moot if it is "impossible to grant the prevailing party effective relief").

### a.   The Inadequacy of the June 2014 IEP

The Court finds that plaintiff was denied a FAPE because his June 2014 IEP lacked any discussion of his least restrictive environment and the type of placement he needed along the continuum of alternative placements. The core of the IDEA is "the cooperative process that it establishes between parents and schools." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005). And importantly, the "central vehicle for this collaboration is the IEP process." *Id.*; *see also Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 260 (Souter, J., dissenting) ("[T]aking part in the collaborative process of developing an IEP [] is the '*modus operandi*' of the IDEA." (emphasis in original) (quoting *Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985))). As another Judge on this Court noted, "the IDEA requires that a school

district do more than simply provide services adequate to meet the needs of disabled students; it requires school districts to involve parents in the creation of individualized education programs tailored to address the specific needs of each disabled student." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 70 (D.D.C. 2010) (citing *A.I. ex rel. Iapalucci v. District of Columbia*, 402 F. Supp. 2d 152, 163–64 (D.D.C. 2005); *see also Town of Burlington, Mass.*, 471 U.S. at 368 ("In several places, the Act emphasizes the participation of the parents in developing the child's educational program and assessing its effectiveness." (citing 20 U.S.C. §§ 1400(c), 1401(19), 1412(7), 1415 (b)(1)(A), (C), (D), (E), and 1415(b)(2); 34 CFR § 300.345 (1984)))).

In conducting this collaborate process, school districts must tailor and develop an IEP to meet the specific special-education needs of each student with a disability. *See* 20 U.S.C. § 1414(d)(2)(A). The plan is developed by the student's IEP Team, a multidisciplinary team consisting of the student's parents and teachers, as well as educational specialists, that meets and confers in a collaborative process to determine the best way to accommodate the needs of the student and provide a FAPE. 20 U.S.C. § 1414(d)(1)(B); *see also K.S. v. District of Columbia*, 962 F. Supp. 2d 216, 220 (D.D.C. 2013) (explaining the role of the IEP team). Moreover, the IEP must be "specific enough to allow parents to understand what services will be provided and make a determination about whether the proposed placement is adequate." *Stein*, 709 F. Supp. 2d at 70. In sum, the IEP meeting and the IEP process more broadly are designed to be transparent, accessible, and interactive. When the process works as intended, parents and other stakeholders are, at a minimum, able to provide meaningful input to shape a student's education.

Given that the IEP is critical to the design and functioning of the FAPE, *see, e.g.*, *Town of Burlington, Mass.*, 471 U.S. at 368 ("The Modus Operandi of the Act is the already mentioned 'individualized educational program.'"); *Leggett v. District of Columbia*, 793 F.3d 59, 67 (D.C.

Cir. 2015) ("[T]he IEP is the vehicle through which school districts typically fulfill their statutory obligation to provide a free appropriate public education . . . ."), it logically follows that a school district's failure to adhere to requirements and procedures of the IEP may result in a deprivation of a FAPE and a violation of the IDEA. *See Bd. of Educ. of Hedrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 205–06 (1982) ("It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, as it did upon the measurement of the resulting  IEP against a substantive standard." (citation omitted)); *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005) (citing this language in *Rowley*); *see also Iapalucci*, 402 F. Supp. 2d at 163–64 ("[W]hen a school district or other state agency violates 'the procedural requirements of the Act by failing to develop an IEP in the manner specified, the purposes of the Act are not served, and the district may have failed to provide a FAPE.'" (quoting *W.G. v. Bd. of Trs. of Target Range Sch. Dist.*, 960 F.2d 1479, 1485 (9th Cir. 1992))).

Of course, "procedural flaws do not automatically render an IEP legally defective;" *see N.S. ex rel. Stein v. District of Columbia*, 701 F. Supp. 2d 57, 67 (D.D.C. 2010) (quotation omitted), however, procedural violations often affect a student's substantive rights, and in such cases, these procedural violations may constitute the denial of a FAPE. *See Leggett v. District of Columbia*, 793 F.3d 59, 67 (D.C. Cir. 2015) ("[A] school district's failure to comply with the procedural requirements of IDEA will be 'actionable' only 'if those procedural violations affected the student's substantive rights.'" (quoting *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 832, 834 (D.C. Cir. 2006)); *see also Jalloh v. District of Columbia*, 968 F. Supp. 2d 203, 211 (D.D.C. 2013) (citing this standard); *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 67 (D.D.C. 2010) (same). More specifically, a procedural defect in an IEP results in a denial of a

FAPE if it "(i) impeded the child's right to a free appropriate public education; (ii) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or (iii) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii). In other words, to set aside an IEP, "there must be some rational basis to believe that procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of education benefits." *Stein*, 709 F. Supp. 2d at 67 (quoting *Roland M. v. Concord Sch. Comm.*, 901 F.2d 983, 994 (1st Cir. 1990)).

Consistent with the requirement that an IEP meeting provide parents with a meaningful opportunity to participate in the process, this Court will adopt the portion of the Magistrate Judge's report which states that an IEP is inadequate if it does not include a description of the student's least restrictive environment and discussion of his appropriate placement along the continuum. Otherwise, a student and his parents would be in a weak position to inform or perhaps challenge the IEP team's determinations, something the IDEA clearly prioritizes. *See infra* at 10. Specifically, the report and recommendation made the following legal determination, which neither the plaintiff nor defendant objected to:

> [I]t appears that no provision of the statute or regulations, by express terms, requires that an IEP include a determination of a student's least restrictive environment and appropriate placement [along the continuum of placements]. However, the undersigned finds that the statute and regulations, read in context, in fact impose such requirement. 20 U.S.C. § 1414(d)(1)(A)(i)(V) (providing that an IEP must include "an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class and in activities described in subclause (IV)(cc)[.]"); *see also A.I. ex rel. Iapalucci*, 402 F. Supp. 2d at 159 (holding that an IEP must include, among other things, a statement regarding "the child's ability to interact with non-disabled children").

Report & Recommendation 12.

Moreover, with respect to the LRE specifically, other Judges on this Court have noted an IEP is appropriate when it "'enable[s] the child to achieve passing marks and advance from grade to grade' in the 'least restrictive environment' possible." *Dixon v. District of Columbia*, 83 F. Supp. 3d 223, 232 (D.D.C. 2015) (quoting *K.S. v. District of Columbia*, 962 F. Supp. 2d 216, 220 (D.D.C. 2013)); *see also Cooper v. District of Columbia*, 77 F. Supp. 3d 32, 38 (D.D.C. 2014) (quoting the same language); *Capital City Pub. Charter Sch. v. Gambale*, 27 F. Supp. 3d 121, 124 (D.D.C. 2014) ("[A]n IEP must ensure, '[t]o the maximum extent appropriate,' that the disabled students is placed in the least restrictive environment." (quoting 20 U.S.C. § 1412(a)(5)(A))); *A.M. v. District of Columbia*, 933 F. Supp. 2d 193, 206 (D.D.C. 2013) ("[The] IEP was also appropriate because it allowed [plaintiff] to be educated in the least restrictive environment."). Indeed, a survey of recent IDEA cases suggests that it is standard to include a description of a student's LRE in his IEP, lending further support to the Magistrate Judge's finding. *See, e.g.*, *Moradnejad v. District of Columbia*, No. 14-1159, 2016 WL 1275577 (D.D.C. Mar. 31, 2016) (alleging that the "least restrictive environment" contained in plaintiff's IEP was "inappropriately changed"); *Ward v. District of Columbia*, No. 13-cv-0098, 2013 WL 6869663 (D.D.C. Dec. 23, 2013) ("With respect to the least restrictive environment ('LRE') provision, Plaintiff's IEP prescribes . . . ."); *M.O. v. District of Columbia*, 20 F. Supp. 3d 31, 36 (D.D.C. 2013) (The IEP "appears to reflect reasonable judgments [by the student's IEP team] as to how to serve [plaintiff's] unique educational needs in the least restrictive environment . . . ."); *Savoy v. District of Columbia*, 844 F. Supp. 2d 23, 27 (D.D.C. 2012) (quoting the IEP's full and detailed description of the plaintiff's least restrictive environment).

Looking beyond recent case law, this conclusion is sensible given the importance the IDEA places on determining a student's LRE. 20 U.S.C. § 1412(a)(5)(A) ("[T]o the maximum extent

appropriate, children with disabilities . . . are educated with children who are not disabled."); *Leggett*, 793 F.3d at 74 (The IDEA "requires that a child be educated in the least restrictive environment possible."). Not only that, but the IEP form itself includes an entire page entitled "Least Restrictive Environment (LRE)," *see* Administrative Record 83, ECF No. 9-3, further supporting that an IEP is deficient if a school district does not "discuss, determine, and indicate on the IEP" a student's least restrictive environment. Report & Recommendation 11 (citing **Hearing Officer Determination 12, Administrative Record 595, ECF 9-9 at 36**).

In sum, given the emphasis the IDEA places on the concept of an LRE and the central role the IEP plays in the broader statutory framework, it only makes sense that—as the Magistrate Judge concluded—an IEP team is required to discuss a student's specific LRE and the IEP is required to include at least a brief description of it.[1] If that were not the case, it would be very difficult to ensure that the IEP "'enable[s] the child to achieve passing marks and advance from grade to grade' in the 'least restrictive environment' possible." *Dixon*, 83 F. Supp. 3d at 232 (quoting *K.S.*, 962 F. Supp. 2d at 220). Perhaps more importantly, it would undermine a student and parent's right to engage in the collaborative process engineered to create an IEP "tailored to address the specific needs of each disabled student." *Stein*, 709 F. Supp. 2d at 70 (citing *Iapalucci*,

---

[1] In addition to a general description LRE, plaintiff makes a strong argument that the District is also required to include some sort of description of the "continuum of alternative placements." *See* Pl.'s Mot. for Summ. J. 17, ECF No. 10-1. Indeed, the Department of Education's implementing regulations specifically lists the types of placements included in this continuum, *see* 34 C.F.R. § 300.115, and identifies a discussion of the alternative placements as an "LRE requirement[]." *See* 34 C.F.R. § 300.115 (citing 34 C.F.R. § 300.115 as one of the LRE requirements). And indeed, the Magistrate Judge's report and recommendation came to the uncontested conclusion that such a discussion is required in a student's IEP. *See* Report & Recommendation 11–12.

402 F. Supp. 2d at 163–64). Therefore, because the plaintiff's IEP fails to discuss his LRE,[2] as well as appropriate alternative placements, the Court finds that his IEP is legally deficient.

Although the Court will adopt the Magistrate Judge's finding that an IEP is inadequate if it lacks both a description of the LRE and alternative placements, it will respectfully reject the recommendation to remand the case to the hearing officer for further factual determinations. As stated, a procedural defect[3] relating to an IEP deprives a student of a FAPE if it "significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child." 20 U.S.C. § 1415(f)(3)(E)(ii). Looking to this standard, the Court finds that the school district's failure to fully discuss the LRE at the IEP meeting or describe it on the IEP itself effectively deprived plaintiff of the opportunity "to understand what services will be provided and make a determination about whether the proposed placement is adequate." *Stein*, 709 F. Supp. 2d at 70. In sum, this omission impeded plaintiff's opportunity to participate in the decisionmaking process, and therefore effectively deprived plaintiff of a FAPE, allowing him to prevail on the merits of his first claim. *See Stein*, 709 F. Supp. 57, 70 (stating that "failures to include required information in an IEP about the services to be provided [to] a disabled student" are far more significant than procedural errors relating to failures to meet statutory deadlines); *see also Leggett v. District of Columbia*, 793 F.3d 59, 67–68 (D.C. Cir. 2015) (finding that even the school district's failure to meet one of

---

[2] Defendant does not dispute that plaintiff's LRE page of his IEP includes hours per week of specialized instruction and behavioral support but omits a full description of plaintiff's LRE. *See* Def.'s Opp'n to Pl.'s Mot. for Summ. J. and Def.'s Cross-Mot. for Summ. J. 4, ECF No. 13 ("There is no dispute that the IEP DCPS developed was Plaintiff's initial IEP. The IEP calls for 26 hours per week of specialized instruction outside of the general education setting and 120 minutes per moth of behavioral support outside of the general education setting."); *see also id.* at 10 (arguing that the IEP was sufficient because it included "[t]he required components of the IEP [] identified in detail in 20 U.S.C. § 1414(d)").

[3] The parties dispute whether the IDEA violations at issue are procedural or substantive in nature. For the purposes of this Opinion, the Court will assume that the District's failure to include a description of an LEA and appropriate placement along a continuum in plaintiff's IEP is a procedural violation.

the IEP's statutory deadlines impacted plaintiff's substantive rights and resulted in the denial of a FAPE).

### b. Remedies

After finding that the school district denied plaintiff a FAPE as to the first claim, the Court will grant plaintiff his requested relief and issue an Order requiring DCPS (i) to issue a Prior Written Notice for plaintiff to attend New Beginnings, and (ii) and to fund tuition and transportation for plaintiff to attend New Beginnings Vocational School retroactive to January 6, 2014. In remedying a violation of the IDEA, a court may "grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). Under this provision, "'equitable considerations are relevant in fashioning relief,' and the Court enjoys 'broad discretion' in so doing." *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 16 (1993) (quoting *Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 374 (1985)). Further, "federal courts have interpreted 'appropriate relief' to include compensatory education as an equitable remedy to be granted upon finding that a child has been denied FAPE under the Act." *Fullmore v. District of Columbia*, 40 F. Supp. 3d 174, 179 (D.D.C. 2014) (citing *Diatta v. District of Columbia*, 319 F. Supp. 2d 57, 64 (D.D.C. 2004)). In awarding a compensatory education, courts must conduct a "fact-specific inquiry . . . reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 524 (D.C. Cir. 2005).

In conducting this fact-specific assessment, the Court finds that the stated relief appropriately provides plaintiff with a compensatory education. The Court's remedy is sensible given the relative success that plaintiff has achieved at New Beginnings and his stated preference

to continue to attend the vocational school. First, after a history of persistent truancy, Plaintiff has developed a record of relative engagement while enrolled in New Beginning's vocational programs. *See, e.g.*, Administrative Record, Ex. 1 at 300–01, Test. of Chithalina Khanchalern, ECF No. 9-1, Dec. 5, 2014 (describing plaintiff as "motivated" and "encouraged [] to be in attendance" while enrolled at New Beginnings). This history of relative success, along with the fact that New Beginnings staff expressed its view that plaintiff should remain at New Beginnings, *see* Administrative Record at 292–93, Ex. 4 at 140–141, ECF No. 9-4 ("It is our recommendation due to student's social and emotional needs . . . that [plaintiff] remain at new Beginnings Vocational Program and all necessary accommodations including transportation and resources is made available . . . ."), support a finding that the New Beginnings, and not Anacostia HS, was and remains suited to meet plaintiff's disability needs.

Next, plaintiff has stated a strong preference to stay in New Beginnings, which not in any way dispositive, *see Bd. of Educ. of Hedrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 215 (1982) (stating that the IDEA provides disabled students no more than a "basic floor of opportunity"); *T.T. v. District of Columbia*, Civil No. 06-0208, 2007 WL 2111032 (D.D.C. July 23, 2007) ("[E]ven though the student's parent preferred a private-school placement, the designated public-school placement was appropriate because DCPS had a general familiarity with its programs and DCPS personnel had special education expertise requiring deference."), is something that schools are required to consider. *See Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985) ("In several places, the [IDEA] emphasizes the participation of the parents in developing the child's educational program and assessing its effectiveness."). Indeed, as the IDEA envisions a collaborative process, *see supra* page 12–13, it is only logical the student's previously-stated preferences play some role in determining the

specifics of a compensatory education. Lastly, in the Court's view, the District's infraction—failing to conduct an analysis or make any mention of a student's LRE—was relatively serious. Therefore, the violation calls for a more robust remedy in order to place the plaintiff in a similar position he would have been in had the violation not occurred in the first place.

### c.   Remaining Claims

In addition to failing to appropriately create an IEP, the District also failed to convene a meeting or incorporate the effects of plaintiff's recent shooting-related injuries when implementing his IEP, representing a second instance where plaintiff was denied a FAPE. The IDEA's implementing regulations require that an IEP team "revise an IEP, as appropriate, to address [among other things] the child's anticipated needs." 34 C.F.R. § 300.324. After plaintiff's IEP was drafted but before he was assigned to Anacostia HS, plaintiff was shot eight times, sustaining serious physical and emotional injuries. *See* Mem. of Points [And] Authorities in Supp. of Pl.'s Mot. for Summ. J. 23, ECF No. 10-1 (stating that DCPS issued its location of services letter to plaintiff one day after he returned to New Beginnings following a violent shooting). The defendant claims that after plaintiff suffered gunshot wounds, the school district was not required to "alter [plaintiff's] IEP services as needed, because the student has never attended [Anacostia HS] to accept the services on his IEP." Def's. Opp'n to Pl.'s Mot. for Summ. J. and Def.'s Cross-Mot. for Summ. J. 14. This argument, however, is unpersuasive. The defendant cannot relieve itself from an independent obligation to convene an IEP meeting by arguing that plaintiff's lack of attendance at Anacostia HS denied the district "any opportunity . . . to assess whether and to what extent his injuries would require changes to his IEP." *Id.* at 15. His attendance at school, or lack thereof, has no bearing on whether or not his anticipated needs had been affected by his shooting-related injuries. Moreover, defendant's argument runs counter to the "stay put" protections plaintiff

received that allow him remain at New Beginnings until this litigation is completed. *See* Administrative Record 194, Order on Petitioner's Motion Regarding "Stay-Put," ECF No. 9-4 at 41 ("DCPS is ORDERED to fund Student's current educational placement at New Beginnings during the pendency of the administrative and any judicial proceeding regarding the underlying due process complaint."); *id.* ("DCPS is ORDERED to provide transportation for Student to travel to and from New Beginnings each school day during the pendency of the administrative and any judicial proceeding regarding the underlying due process complaint.").

In addition, being shot eight times clearly provides reasonably grounds to conclude plaintiff's "anticipated needs" have been altered. 34 C.F.R. § 300.324. Indeed, according to staff at New Beginnings, due to his gun shot wounds, plaintiff required a "wheelchair and cane," had difficulty with "simple writing activities and retention," required additional professional emotional support, and suffered "flashbacks and night terrors." Letter from New Beginnings Staff, Oct. 22, 2014, Administrative Record at 292–93, Ex. 4 at 140–141, ECF No. 9-4. The District's refusal to convene a new IEP meeting to consider these changes impacted his substantive right to have these disabilities accommodated, and therefore denied him a FAPE. *See Leggett v. District of Columbia*, 793 F.3d 59, 67 (D.C. Cir. 2015) (articulating the standard that procedural violations result in the denial of a FAPE only if the failure affects a student's substantive rights).[4]

In determining a remedy for this violation of the IDEA, the Court finds it is appropriate to require DCPS to convene an IEP meeting to update the student's IEP to incorporate new data, including (i) present levels of performance, (ii) any goals that may need to be revised based on the

---

[4] To be clear, with respect to this specific claim, the plaintiff simply alleges that "DCPS should and could have waited to issue any location of services letter until it was able to hold a properly-scheduled meeting . . . regarding the student's needs following the shooting," Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. and Opp'n to Def.'s Cross-Mot. for Summ. J. 21, ECF No. 15. The Court agrees, and finds this failure affected his substantive rights and therefore violated the IDEA.

shooting and the resulting physical and emotional harm to the student, and (iii) discussing and determining whether the student may need any related services based on recent incidents and its effects. As stated, Courts have "broad discretion" in fashioning remedies for IDEA violations, *Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 16 (1993), and are directed to provide the "educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 524 (D.C. Cir. 2005). In considering this standard, ordering the IEP team to convene a meeting is sensible given that this sort of collaborative dialogue sits at the core of the IDEA. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005). Indeed, this order simply forces the district to perform a task that it was obligated to carry out before the commencement of this lawsuit. As such, it is tailored to remedy the specific type of harm plaintiff suffered and designed to provide him a compensatory education, that is, put him in a situation that he would have otherwise been in had the District originally carried out its obligations.

Lastly, because the remedies that the Court has awarded plaintiff in connection with claims 1 and 3 would also effectively remedy any of potential violations alleged in plaintiff's four other claims, the rest of plaintiff's claims are now moot. *See Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008) (stating that a claim becomes moot if it is "impossible to grant the prevailing party effective relief"). On the basis of these two violations alone, the Court has already ruled that it is appropriate to require DCPS (i) to issue a Prior Written Notice for plaintiff to attend New Beginnings, (ii) to fund tuition and transportation for plaintiff to attend New Beginnings Vocational School retroactive to January 6, 2014; (iii) to convene an IEP meeting to discuss and respond to plaintiff's recently developed disability; and (iv) if needed, to administer necessary evaluations to determine the extent and nature of plaintiff's disabilities. As such, plaintiff has

received all the relief that he requested and all that would be appropriate to grant in this case. Indeed, even if the District did violate the IDEA as to all the remaining claims, the remedies the Court has already provided would place the plaintiff in the exact same situation had the violations not occurred in the first place. *See Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 524 (D.C. Cir. 2005) (describing the standard for compensatory education). Therefore, the remainder of the case is moot.

To conclude, the Court will adopt the portion of the Magistrate Judge's report and recommendation that concludes an IEP is required to discuss a student's LRE and appropriate placement along the continuum of placements. Second, the Court finds that the District's failure to meet this requirement denied the plaintiff a FAPE and is a violation of the IDEA, as the IEP's defect impacted the plaintiff's substantive rights. Third, the District's failure to convene an IEP meeting to discuss the effects of plaintiff's shooting-related injuries constituted a second, independent denial of a FAPE. Fourth, to provide the plaintiff with a compensatory education, the Court orders DCPS (i) to issue a Prior Written Notice for plaintiff to attend New Beginnings, (ii) to fund tuition and transportation for plaintiff to attend New Beginnings Vocational School retroactive to January 6, 2014; (iii) to convene an IEP meeting to discuss and respond to plaintiff's recently developed disability needs; and (iv) if additional information is needed, administer medical and psychological evaluations to determine the full extent of plaintiff's special education needs. In light of the remedies for the violations described in counts 1 and 3, the Court is not in a position to provide plaintiff with any additional effective relief. Therefore, plaintiff's remaining claims are moot.

## IV.    CONCLUSION

For the reasons stated herein, the Court finds that the District denied plaintiff a FAPE. With respect to claims 1 and 3, the Court will GRANT plaintiff's [10] motion for summary judgment and DENY defendant's [14] cross-motion for summary judgement. Additionally, plaintiff's [19] objections to the Magistrate Judge's report and recommendation [18] are sustained.

A separate Order consistent with this Memorandum Opinion and granting plaintiff the appropriate relief shall issue on this date.

Royce C. Lamberth
United States District Judge

Date: 4/13/16